IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**CHARLES P. PRIDE**                                                               **PLAINTIFF**

v.                                                                    Civil No. 1:11CV22-HSO-JMR

**FEMA, Federal Emergency Management**                                   **DEFENDANTS**
**Agency; MALE AND FEMALE JOHN**
**DOES who may also be known as**
**PHILLIP STROUSE and SUE ANN LONDON,**
**FEMA TRAILER MANAGERS in their**
**official and individual capacities;**
**BILOXI DIRECTOR OF COMMUNITY**
**DEVELOPMENT JERRY CREEL in his**
**official and individual capacity; BILOXI**
**CITY CODE ENFORCEMENT OFFICER**
**MIKE ANDREWS in his official and individual**
**capacity, AS PREVIOUSLY UNKNOWN**
**DEFENDANTS. OTHER UNKNOWN DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER GRANTING**</u>
<u>**JERry CREEL AND MIKE ANDREWS'**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

BEFORE THE COURT is the Motion [95] for Summary Defendant, filed by Defendants Jerry Creel and Mike Andrews. *Pro se* Plaintiff, Charles P. Pride, has filed a Response [127], and Creel and Andrews have filed a Reply [133]. Pride also addresses his claims against Creel and Andrews in his Motion [97] for Summary Judgment, Memorandum in Support [98], and Reply [130], and the Court will consider these filings and attached exhibits when ruling on the instant Motion [95]. After consideration of Creel and Andrews' Motion [95] for Summary Judgment, the record, and relevant legal authorities, the Court finds that, because Pride's claims against Creel and Andrews are barred by the doctrine of *res judicata*, Creel and Andrews' Motion [95] for Summary Judgment should be granted. Pride's claims

against Creel and Andrews will be dismissed with prejudice.

# I. BACKGROUND

A.   Procedural History

Jerry Creel is the Community Development Director for the City of Biloxi, Mississippi, and Mike Andrews is a former City of Biloxi Code Enforcement Officer. Def.'s Mot. [95] for Summ. J. at pp. 1-2. On January 18, 2011, Pride filed the instant suit against the Federal Emergency Management Agency ("FEMA") and Creel and Andrews, in their official and individual capacities. Pride previously sued Creel and Andrews in a separate action in this Court, *Pride v. City of Biloxi et al.*, Civil Action No. 1:10cv100-LG-RHW. Pride filed the previous action on March 5, 2010, and on January 22, 2013, a Final Judgment was rendered in favor of Creel and Andrews. Pl.'s Compl. [1] in Civil Action No. 1:10cv100-LG-RHW; Final J. [104] in Civil Action No. 1:10cv100-LG-RHW. Pride appealed the Final Judgement, and his appeal is currently pending before the Fifth Circuit Court of Appeals as Case No. 13-60359. The claims raised in Pride's first action against Creel and Andrews are pertinent to the resolution of this case.

B.   Factual Background

Following Hurricane Katrina in August 2005, FEMA leased Pride a travel trailer for temporary housing, pursuant to its authority under the Robert T. Stafford Disaster Relief and Emergency Assistance Act of 1988 ("Stafford Act"), 42 U.S.C. §§ 5121-5207, and implementing regulations. Pride signed a Lease with FEMA for the trailer, and the Lease term began on March 12, 2006. Lease [114-1] at pp. 4-5. On

January 5, 2009, nearly three and half years after Hurricane Katrina, FEMA deactivated the travel trailer and retrieved it from Pride's property. FEMA Temporary Housing Unit Inspection Report [114-1] at p. 6. For purposes of context and subsequent analysis, the Court will summarize the circumstances leading up to and following FEMA's retrieval of the travel trailer, whether or not they are pertinent to Pride's claims now before the Court.

On April 11, 2004, prior to Hurricane Katrina, Pride was issued a citation by the City of Biloxi for "extreme amounts of debris, trash, white goods, equipment, and abandoned or junked vehicles" on his property in violation of several municipal ordinances. Notice of Violation [83-1] in Civil Action No. 1:10cv100-LG-RHW. Documents submitted by Pride indicate that the City of Biloxi cleaned the property and levied a special assessment against it in the amount of $690 for cleaning costs. City of Biloxi Agenda Item [97-3] at p. 2. On January 31, 2006, after Hurricane Katrina, Pride was issued a citation by the City of Biloxi for numerous code violations involving a dilapidated residential structure and the accumulation of trash, appliances, white goods, offensive substances, weeds, and debris on his property. Notice of Violation [83-2] in Civil Action No. 1:10cv100-LG-RHW. Documents submitted by Pride indicate that he was convicted of the 2006 charges and fined $4,000. Municipal Court Doc. [95-1] at pp. 15-16. On January 4, 2008, Pride was again cited by the City of Biloxi for "growth, trash, debris, white goods, appliances, offensive substances, trailer (FEMA) w/out permit, repair of unfit, or dangerous structure – Repeat Violation!" Notice of Violation [83-3] in Civil Action No.

1:10cv100-LG-RHW.  Documents submitted by Pride indicate that he was also convicted of the 2008 charges, fined $2,230, and sentenced to serve 30 days suspended in jail.  Municipal Court Doc. [97-1] at p. 17.  Pride claims that his 2006 and 2008 convictions were overturned on appeal.  Pl.'s Resp. [127] at pp. 6-7.  He has submitted court documents indicating that he appealed these convictions, but he has not submitted any court documents indicating that these convictions were overturned.

During the period of July through December 2008, Pride was not living in his FEMA trailer in Biloxi but was instead living in Wisconsin, where he owned a residence.  Pl.'s Resp. [130] at p. 3; Dep. of Pride [95-7] at p. 5; FEMA Addendum to Lease [97-2] at pp. 16-17.  Pride submits that he was not living in the FEMA trailer at this time because he was awaiting approval for an elevation grant to remodel his Biloxi residence.  Dep. of Pride [95-7] at pp. 5-6.  Pride admits, however, that he regularly spent several months out of the year residing in Wisconsin during the time that he was leasing the FEMA trailer in Biloxi.  Dep. of Pride [95-7] at p. 4.  Before leaving for Wisconsin, Pride would have the power company disconnect the electricity to the FEMA trailer.  Pl.'s Resp. [130] at p. 2; Dep. of Pride [95-7] at pp. 3-6.

The state of Pride's property, the condition of the FEMA trailer, and Pride's absence from the area were a matter of concern to both the City of Biloxi and FEMA. Various Emails [97-1] at pp. 32, 34; Various Emails [97-2] at pp. 1-4, 6-10, 12-13.  It appeared to some FEMA and Biloxi representatives that Pride had abandoned the FEMA trailer.  Various Emails [97-1] at pp. 32, 34; Various Emails [97-2] at pp. 1-4, 6-10, 12-13.  On July 23, 2008, a structural feasability inspection was performed by

the City Biloxi on the house on Pride's property. Summary of Structural Feasability Inspection [83-4] in Civil Action No. 1:10cv100-LG-RHW.

On October 21, 2008, the Biloxi City Council held a public hearing regarding Pride's property. Pride failed to appear. Council Minutes [83-7] in Civil Action No. 1:10cv100-LG-RHW. On October 28, 2008, the City Council determined that Pride's property was "in such a state of uncleanliness as to be a menace to the public health and safety of the community in [its] present condition." Resolution No. 718-08 [95-1] at p. 6. The City Council directed Creel to notify Pride to clean his property by "cutting all weeds, filling cisterns, removing rubbish, dilapidated buildings and other debris, and draining cesspools and water therefrom within (10) days from the date of receipt of the notice . . . ." *Id.* In the event that Pride did not comply within ten days of receiving notice, the City Council authorized Creel to have the property cleaned and further authorized the assessment of cleaning costs as a lien against the property. *Id.*

By letter dated November 25, 2008, Creel wrote a letter to FEMA specialist Kelly Derouen, informing her that a Biloxi code enforcement officer had inspected the FEMA trailer issued to Pride and determined that the power was disconnected and that the trailer was "being used for storage only and no longer as a residence." Letter [127-1] at p. 24. On December 2, 2008, Creel wrote another letter to Derouen advising her that the trailer leased to Pride "remains unoccupied, without electrical service and is currently being used only for storage." *Id.* at p. 30. In this letter, Creel informs Derouen that "[t]he Temporary Storm Trailer Permit issued to Charles P.

Pride expired on August 8, 2008[,] and for the reasons stated above, it will not be renewed.  Please see fit to remove this trailer at your earliest convenience." *Id.*

FEMA specialist Carolyn Stafford contacted Pride by telephone on December 9, 2008, and advised him that the FEMA trailer "must be deactivated since he has been out of town for three months and has not used the unit as permanent housing, there are no utilities connected, nor has he met with his CW." Stafford Note [127-1] at p. 45.  Stafford informed Pride that "FEMA could not allow [the] unit to remain on site without the proper permits from the City." *Id.*  Pride indicated that he understood and subsequently wrote Stafford a letter, stating: "Despite having a real need for this housing for my elevation and rebuild this winter[,] I understand that per Biloxi's request the trailer will be removed on Jan. 5/09." Pride Letter [97-3] at p. 34.  On January 5, 2009, Pride was present when FEMA arrived to retrieve the trailer, and he signed a FEMA Temporary Housing Unit Inspection Report, indicating that he was moving out and returning the trailer to FEMA.  *Id.*  The Inspection Report notes that the trailer was returned with extensive interior damage and without its battery, a tire, and two mattresses.

On January 15, 2009, a police officer hand delivered a letter to Pride from Creel.  Letter [83-9] in Civil Action No. 1:10cv100-LG-RHW.  Creel also sent the letter by certified mail, and Pride signed for it on January 16, 2009.  *Id.*  Creel's letter informed Pride that in ten days his property would be cleaned, including "the demolition of the existing residential structure, the removal of trash, debris and the overgrowth. . . . If there is anything of value that you wish to retain, it must be

removed from the property prior to the expiration of this notice." *Id.* Pride did not clean his property within ten days of receiving notice. On January 21, 2009, in preparation for the impending demolition of the dilapidated structure and well after FEMA had retrieved the travel trailer, Creel wrote letters to the Biloxi Water Department and Mississippi Power Company requesting that no new service be provided to the residence at Pride's address without prior approval of the Building Division of the City of Biloxi. Aff. of Creel [95-1] at p. 2; Letters [95-1] at pp. 11-12. On February 4, 2009, Creel again wrote the Biloxi Water Department, "requesting the water be turned off and meter pulled . . . [d]ue to the fact, this structure is scheduled to be demolished on February 5, 2009." *Id.* at p. 13. On February 5, 2009, the City demolished the structure and cleaned Pride's property.

C.   Pride's Claims in the Present Suit Against Creel and Andrews

In the present suit, Pride seeks redress against Creel and Andrews "for the due process and equal protection clause deprivation of the Plaintiff's FEMA trailer, water, sewer, and electrical public utilities, without substantive or procedural notice, hearing or a citation charge." Pl.'s Third Am. Compl. [59] at p. 1. Pride contends that Creel and Andrews conspired with FEMA to take the trailer from him and that it was a "taking without compensation." *Id.* at p. 2. He alleges that Creel requested the removal of water, sewer, and electricity to the FEMA trailer without proper notice and accuses Andrews of "fraudulent email misrepresentation of the truth." *Id.* The claims against Creel and Andrews that are properly before the Court are limited to these, although Pride attempts to raise new claims against Creel and Andrews in his

Motions and Memorandums.[1]

D.     Pride's Claims in the First Action Against Creel and Andrews

In his earlier suit in this Court against Creel and Andrews, Pride also sued the City of Biloxi, Biloxi's mayor, various City Council members, and another Biloxi Code enforcement officer.  Pl.'s Third Am. Compl. [16] in Civil Action No. 1:10cv100-LG-RHW.  Pride alleged that the events surrounding the citations issued to him in 2006 and 2008, his subsequent convictions, and the 2009 cleaning of his property and demolition of his residence violated his constitutional rights and rights under state law.  *Id.*  Pride asserted claims against Creel and Andrews that are identical to the claims he advances against them in the present suit now pending before the Court. Pride's Complaint in the first action alleged that:

> Director Defendant Jerry Creel ordered the Plaintiffs Biloxi water supple [sic] not just turned off, while he was still both using and in need of the water service, without notice or hearing but, had the water physically capped off and the water meter removed under ordered police department supervision to prevent Plaintiffs [sic] future property uses an additional taking.  Plaintiff never received due process utility notice or his $100 water deposit or a final billing by the Biloxi Water Department by the deprivation Biloxi taking.

*Id.* at p. 10, ¶ 34.

> Biloxi Code Official Mike Andrew and others did conspire by malicious prosecution and fraud by willful misrepresentations of the Plaintiff's FEMA trailer uses, causing, through prmia [sic] fascia [sic] emails and other

---

[1]"A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)(citation omitted).

> contacts with FEMA representative the Biloxi caused taking of the Plaintiffs [sic] lawful FEMA trailer use at 318 4th. Leaving the Plaintiff homeless, a constitutional deprivation and taking, without notice, hearing, due process or compensation by retaliation malicious Biloxi Code Officials willful actions.

*Id.* at p. 11, ¶ 37.

> Plaintiff seeks compensatory damages for the willful, malicious, fraudulent acts conducted by Biloxi code enforcement officials who conspired with FEMA officials to deprive Plaintiff of his desperately needed FEMA trailer, followed by deprived water public utilities. Lost housing costs $16,100.

*Id.* at p. 12, ¶ 37.

In Pride's first suit, this Court dismissed Pride's Fifth Amendment "takings" claim, finding that Pride had not pursued compensation for the alleged "takings" through state procedure. Order Granting in Part and Denying Part Defs.' Mot. to Dismiss [44] at pp. 7-9 in Civil Action No. 1:10cv100-LG-RHW. The Court dismissed Pride's claims under the Mississippi Tort Claims Act, § 11-46-1, *et seq.*, because Pride did not submit a notice of claim prior to filing suit as required by the Act. *Id.* at pp. 9-10. The Court dismissed Pride's claims against Andrews in his individual capacity, concluding that Andrews was entitled to qualified immunity. *Id.* at p. 23. The Court found that Pride's claim against Andrews for "willful misrepresentation [by] emails" was conclusory and "not enough to establish" violation of a clearly established constitutional right. *Id.* The Court further dismissed Pride's claims against the City of Biloxi, finding that Pride "ha[d] not set forth any basis on which the Court could find the City liable under section 1983." Order Granting Defs.' Mot. for Summ. J.

[103] at p. 6 in Civil Action No. 1:10cv100-LG-RHW.  Finally, the Court dismissed Pride's individual capacity claims against Creel, finding that Creel was entitled to qualified immunity.  *Id.* at p. 11.  The Court stated:

> Given that the City Council directed Creel, pursuant to a process established by state statute, to clean Pride's property and remove the "dilapidated buildings" thereon, the Court cannot find that when Creel took these actions, he acted with knowledge that his actions were unlawful, or that he was not objectively reasonable.

*Id.*

## II.  DISCUSSION

A.  Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "[i]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law.  An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Melton v. Teachers Ins. & Annuity Ass'n of Am.,* 114 F.3d 557, 560 (5th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both

parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc). The Court does not "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton,* 232 F.3d at 477. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co,* 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson,* 477 U.S. at 249). "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "The court has no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.*

B.      True *Res Judicata* or Claim Preclusion

To determine the preclusive effect of a prior federal court judgment, federal courts apply federal common law. *Comer v. Murphy Oil USA, Inc.,* 718 F.3d 460, 467 n.8 (5th Cir. 2013). The doctrines of claim preclusion and issue preclusion are collectively referred to as *res judicata. Id.* at 466-67. Where there has been "a final judgment on the merits of an action," true *res judicata,* or claim preclusion, "precludes the parties or their privies from relitigating issues that were or could have been

-11-

raised in the first action." *Id.* at 467.[2] "The nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted, defines the claim." *United States v. Davenport,* 484 F.3d 321, 326 (5th Cir. 2007). "[E]ven if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, *so long as judgment in the first suit remains unmodified.*" *Comer,* 718 F.3d at 467 (emphasis supplied). "Accordingly, a case pending appeal is res judicata and entitled to full faith and credit unless and until reversed on appeal.'" *Id.* (internal citations omitted).

> True *res judicata*, or claim preclusion
>
>> has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.

*Id.* at 467 (internal citation omitted).

True *res judicata* or claim preclusion bars all of Pride's claims against Creel and Andrews in this action. In the earlier case Pride filed in this Court, Civil Action No. 1:10cv100-LG-RHW, Pride asserted the same claims against Creel and Andrews that he asserts here. A Final Judgment adverse to Pride has been entered in Civil Action No. 1:10cv100-LG-RHW and remains unmodified. Pride is precluded from

---

[2]"Although a jurisdictional ruling is technically not an adjudication on the merits, it has long been the rule that principles of *res judicata* apply to jurisdictional determinations – both subject matter and personal." *Comer,* 718 F.3d at 469 (internal citations omitted).

relitigating claims against Creel and Andrews that he raised or could have raised against them in his first action. Creel and Andrews' Motion [95] for Summary Judgment should be granted, and Pride's claims against them should be dismissed.

### III.  CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [95] for Summary Judgment, filed by Defendants Jerry Creel and Mike Andrews, is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Charles P. Pride's claims against Defendants Jerry Creel and Mike Andrews are dismissed with prejudice, and Creel and Andrews are dismissed as parties to this action.

**SO ORDERED AND ADJUDGED**, this the 30th day of October, 2013.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE