## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**CHARLES P. PRIDE**                                                    **PLAINTIFF**

**v.**                                                    **Civil No. 1:11CV22-HSO-JMR**

**FEMA, Federal Emergency Management**                **DEFENDANTS**
**Agency; MALE AND FEMALE JOHN**
**DOES who may also be known as**
**PHILLIP STROUSE and SUE ANN LONDON,**
**FEMA TRAILER MANAGERS in their**
**official and individual capacities;**
**BILOXI DIRECTOR OF COMMUNITY**
**DEVELOPMENT JERRY CREEL in his**
**official and individual capacity; BILOXI**
**CITY CODE ENFORCEMENT OFFICER**
**MIKE ANDREWS in his official and individual**
**capacity, AS PREVIOUSLY UNKNOWN**
**DEFENDANTS. OTHER UNKNOWN DEFENDANTS**

## MEMORANDUM OPINION AND ORDER GRANTING
## FEMA'S THIRD MOTION TO DISMISS AND GRANTING IN PART AND
## DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendant, the Federal Emergency Management

Agency's ("FEMA's") Third Motion [99] to Dismiss, and *pro se* Plaintiff, Charles P.

Pride's Motion [97] for Summary Judgment.  Pride has filed a two-paragraph

Response [112] to FEMA's Motion [99].  FEMA has filed a Response [115] to Pride's

Motion, and Pride has filed a Reply [130].  Pride also addresses his claims against

FEMA in his Response [127] to the Motion [95] for Summary Judgment filed by

Defendants Jerry Creel and Mike Andrews.[1]  Pride has submitted exhibits which he

---

[1]Pride titles his Response [127] as "Plaintiff's Response to Both FEMA and
Biloxi Motions for Summary Judgment."  The Court will construe this Response
[127] as a Response to FEMA's Motion [99] to Dismiss.

contends support his claims against FEMA, and FEMA has also submitted exhibits relevant to Pride's claims.  The Court has considered all of the aforementioned Motions [95][97][99] and exhibits and will convert FEMA's Third Motion [99] to Dismiss to one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d).

After consideration of the Motions [97][99], the record, and relevant legal authorities, the Court finds that FEMA's Third Motion [99] to Dismiss, which the Court construes as one for summary judgment, should be granted, and Pride's Motion [97] for Summary Judgment should be granted in part and denied in part.[2] Pride's claims against FEMA should be dismissed with prejudice, and FEMA's Counterclaim [57] against Pride should be dismissed with prejudice.  Judgment should nevertheless be rendered against Pride in the amount of $660.99 because Pride failed to attend a duly noticed settlement conference, and Defendants' fees and costs were assessed against him.  Magistrate Judge's Order [137].

## I. BACKGROUND

Pride maintains that his home in Biloxi, Mississippi, was heavily damaged by Hurricane Katrina, which occurred in August 2005.  *Id.* at p. 1.  On March 12, 2006, FEMA leased Pride a travel trailer for temporary housing pursuant to its delegated authority to do so under the Robert T. Stafford Disaster Relief and

---

[2]The portion of Pride's Motion [97] for Summary Judgment directed towards Creel and Andrews is moot in light of the Court's October 30, 2013, Memorandum Opinion and Order [161] granting Creel and Andrews' Motion [97] for Summary Judgment and dismissing Pride's claims against Creel and Andrews with prejudice.

Emergency Assistance Act of 1988 ("Stafford Act"), 42 U.S.C. §§ 5121-5207, and implementing regulations.

During the period of July through December 2008, Pride was not living in the FEMA trailer but was instead living in Wisconsin, where he owned a residence. Pl.'s Resp. [130] at p. 3; Dep. of Pride [95-7] at p. 5; FEMA Addendum to Lease [97-2] at pp. 16-17.  Before leaving for Wisconsin, Pride had the power company disconnect the electricity to the FEMA trailer.  Pl.'s Resp. [130] at p. 2; Dep. of Pride [95-7] at pp. 3-6.  By letter dated December 2, 2008, Jerry Creel, Director of Community Development for the City of Biloxi, advised FEMA Mobile Home Support Specialist Kelly Derouen that Pride's Temporary Storm Trailer Permit had expired and would not be renewed because the trailer "remains unoccupied, without electrical service and is currently being used only for storage."  Creel Letter [127-1] at p. 30.  Creel requested that FEMA remove the trailer at its earliest convenience. *Id.*

The Stafford Act's implementing regulations state that "FEMA-provided or funded housing units" must be "complete with utilities."  44 C.F.R. § 206.117(b)(1)(ii)(E).  They also require that "[a]ny site upon which a FEMA-provided housing unit is placed must comply with applicable State and local codes and ordinances, . . . ."  44 C.F.R. § 206.117(b)(1)(ii)(C).  FEMA Manufactured Housing Operations Specialist Carolyn Stafford contacted Pride by telephone on December 9, 2008, and advised him that the FEMA trailer "must be deactivated since he has been out of town for three months and has not used the unit as

permanent housing, there are no utilities connected, nor has he met with his CW."
Stafford Note [127-1] at p. 45.  Stafford informed Pride that "FEMA could not allow
[the] unit to remain on site without the proper permits from the City." *Id.*

Pride indicated that he understood and subsequently wrote Stafford a letter,
stating: "Despite having a real need for this housing for my elevation and rebuild
this winter[,] I understand that per Biloxi's request the trailer will be removed on
Jan. 5/09." Pride Letter [97-3] at p. 34.  On January 5, 2009, Pride was present
when FEMA retrieved the trailer.  Inspection Report [114-a].  Pride signed a FEMA
Temporary Housing Unit Inspection Report, indicating that he was moving out and
returning the trailer to FEMA.  Inspection Report [114-1].  The Inspection Report
notes that the trailer was returned with extensive interior damage and without its
battery, a tire, and two mattresses.  *Id.*

Pride now asserts that FEMA violated his procedural and substantive due
process rights when it deactivated and retrieved the FEMA trailer.  Pl.'s Third Am.
Compl. [59] at pp. 1-4.  Pride's Complaint also characterizes FEMA's actions as a
"taking without compensation." *Id.* at p. 2.  Pride has since dismissed his takings
claim but "continues with his claims sounding in tort under Section 1983." Pl.'s
Stip. of Dism. [167].  FEMA maintains that Pride cannot establish a due process
violation because he had no constitutionally protected property interest in
continuing use of the trailer FEMA leased to him.  FEMA's Mem. [100] at pp. 8-9.
FEMA submits that temporary housing assistance under the Stafford Act is a
discretionary benefit and not an entitlement that triggers protection under the Due

-4-

Process Clause of the Fifth Amendment to the United States Constitution. *Id.*

FEMA has filed a Counterclaim against Pride contending that he is liable to the United States for violation of the False Claims Act, 31 U.S.C. §§ 3729-3733, and under common law "for his fraudulent acts, false claims, and false statements . . . in order to obtain Federal disaster assistance following Hurricane Katrina . . . ." FEMA's Answer and Countercl. [57] at pp. 5-6. FEMA essentially alleges that Pride falsely claimed that his primary residence was in Biloxi when it was not. *Id.* at pp. 10-14. FEMA asserts that Pride received $21,046.19 in disaster assistance that he should not have, and seeks treble damages in the amount of $63,138.57, "plus a civil penalty in the amount of $5,500 to $11,000 per violation, applicable interest, and costs." *Id.* at p. 13. On May 18, 2012, the United States Attorney's Office, Southern District of Mississippi, declined to criminally prosecute Pride in relation to his claim for federal disaster benefits following Hurricane Katrina, finding "[n]o evidence of intent to commit fraud." Homeland Security Mem. [97-2] at p. 25; FEMA Rep. [97-2] at p. 31. Pride seeks dismissal of FEMA's Counterclaim on this basis. Pl.'s Mem. [98] at pp. 10-11.

## II. <u>DISCUSSION</u>

A.   <u>Legal Standard</u>

Because the Court has considered matters outside the pleadings and all parties have been given a reasonable opportunity to present all material pertinent to FEMA's 12(b)(6) Motion [99] to Dismiss, the Court hereby converts FEMA's Third Motion [99] to Dismiss to one for summary judgment. Fed. R. Civ. P. 12(d); Order

[154] Providing Notice.

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co,* 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *RSR Corp.*, 612 F.3d at 858. "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Anderson*, 477 U.S. at 248).

B.   <u>Plaintiff's Fifth Amendment Procedural and Substantive Due Process Claims</u>

The Fifth Amendment to the United States Constitution guarantees that the federal government will not deprive its citizens of property without due process of law.  U.S. Const. amend. V.  In order to prevail on his Fifth Amendment procedural and substantive due process claims against FEMA, Pride must establish that he had a constitutionally protected property interest in continuing use of the travel trailer leased to him by FEMA.  *United States v. Salerno,* 481 U.S. 739, 746 (1987); *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976).  He must also demonstrate that "FEMA's procedures [we]re constitutionally inadequate."  *Ridgely v. Federal Emergency Mgmt. Agency,* 512 F.3d 727, 734 (5th Cir. 2008).

The Stafford Act authorizes federal relief and recovery assistance to the States in response to Presidentially-declared major disasters.  42 U.S.C. §§ 5121-5207.  FEMA is the federal agency the President has charged with implementing and carrying out major disaster assistance under the Stafford Act.  Section 408 of the Stafford Act grants the President authority to provide temporary housing assistance to "individuals and households who are displaced from their predisaster primary residences or whose predisaster primary residences are rendered uninhabitable . . . ."  42 U.S.C. § 5174(a)(1).  Under § 408, the President, through FEMA, may provide two types of temporary housing assistance: (1) financial assistance, which is intended to pay for renting alternate housing accommodations; and (2) "temporary housing units, acquired by purchase or lease, directly . . . ."  42 U.S.C. § 5174(c)(1); *see* 44 C.F.R. § 206.110.  The Stafford Act and its implementing

-7-

regulations establish eligibility factors for the receipt of temporary housing assistance.  42 U.S.C. § 5174; 44 C.F.R. §§ 206.113, 206.114.

In *Ridgely v. Federal Emergency Mgmt. Agency,* the issue before the Fifth Circuit Court of Appeals was whether recipients of § 408 financial assistance benefits had a property right, protected by the Fifth Amendment's Due Process Clause, in continued financial assistance.  512 F.3d 727 (5th Cir. 2008).  The Fifth Circuit held that the Stafford Act and its implementing regulations do not create a constitutionally protected property interest in such benefits.  *Id.* at 736.  The Court of Appeals noted:

> The "mere existence of a governmental program or authority empowered to grant a particular type of benefit to one such as the plaintiff does not give the plaintiff a property right, protected by the due process clause, to receive the benefit, absent some legitimate claim of *entitlement* – arising from statute, regulation, contract, or the like – to the benefit."

*Id.* at 735 (citing *Blackburn v. City of Marshall,* 42 F.3d 925, 941 (5th Cir. 1995)(emphasis in original)).

The Fifth Circuit concluded that FEMA's authority to provide § 408 financial rental assistance is discretionary.  *Id.* at 735-36.  The Stafford Act and its regulations provide that the President and FEMA "may" provide assistance to those who are eligible.  *Id.* at 736.  An individual has no right to receive § 408 financial rental assistance, even if he satisfies the eligibility criteria or has previously received such benefits.  *Id.* at 736-38.  While the Stafford Act and its regulations, standing alone, do not create an entitlement, the Fifth Circuit indicated that FEMA

could conceivably create an entitlement by narrowing its discretion to provide

benefits through its policies and practices.  *Id.* at 739.  The Court could not

determine whether such had occurred in *Ridgely* because the case was before it on

interlocutory appeal, and the record was limited.  *Id.*

Like the § 408 financial assistance benefits addressed in *Ridgely,* § 408 direct

housing benefits are also granted at FEMA's discretion.  42 U.S.C. §

5174(c)(1)(B)(i)("The President may provide temporary housing units . . . ."); 44

C.F.R. § 206.117(b)(ii)("FEMA may provide direct assistance in the form of

purchased or leased temporary housing units directly . . . .").  Thus, even if Pride

met the eligibility requirements to receive a FEMA trailer, FEMA was not required

to lease him one or to renew his lease.  The Stafford Act and its regulations do not

create an entitlement to § 408 direct housing benefits, and the record here is

insufficient to support the conclusion that FEMA created such an entitlement

through its policies or practices.  The Lease between FEMA and Pride made clear

that the travel trailer was provided on a temporary basis with no guarantee of

continued assistance.  Lease [114-1].  The Lease also informed Pride that his use of

the trailer was subject to his "compl[iance] with applicable State and local codes

and ordinances."  *Id.*

Pride takes issue with the fact that FEMA did not provide him with written

notice of termination fifteen days prior to deactivating and retrieving the travel

trailer.  A Stafford Act implementing regulation states that "FEMA will provide a

15 day written notice when initiating the termination of direct assistance that we

-9-

provide under our lease agreements." 44 C.F.R. § 206.117(b)(1)(ii)(H).  Pride's

Lease also provided that the landlord may terminate the lease by giving the tenant

15 days written notice prior to the date of termination.  Lease [114-1].  FEMA

maintains that "[it] did not terminate the Lease.  Rather, FEMA deactivated the

trailer when it was voluntarily returned to FEMA by Pride."  FEMA's Mem. [115] at

p. 4.  Pride denies voluntarily returning the trailer.  Pl.'s Mem. [127] at p. 9; Pl.'s

Mem. [130] at pp. 3-5.

        The Court is not persuaded that the fifteen-day written notice provision in 44

C.F.R. § 206.117(b)(1)(ii)(H) creates a constitutionally protected property interest,

and Pride has submitted no legal authority to support such a conclusion.  Assuming

that Pride could establish a constitutionally protected property interest, he cannot

demonstrate that "FEMA's procedures [we]re constitutionally inadequate" under

the circumstances here.  *Ridgely,* 512 F.3d at 734.  While FEMA did not provide

Pride with fifteen-days prior written notice, it did call Pride and give him twenty-

seven-days prior notice by telephone that it intended to retrieve the trailer.  FEMA

also informed Pride of the reasons why it was deactivating and retrieving the

trailer.  On December 9, 2008, Carolyn Stafford asked Pride to grant FEMA access

to his property to remove the FEMA trailer because "FEMA could not allow [the]

unit to remain on site without the proper permits from the City."  Stafford Note

[127-1] at p. 45.  Pride indicated that he understood and subsequently wrote

Stafford a letter, stating: "Despite having a real need for this housing for my

elevation and rebuild this winter[,] I understand that per Biloxi's request the trailer

will be removed on Jan. 5/09." Pride Letter [97-3] at p. 34.  On January 5, 2009, Pride was present when FEMA retrieved the trailer, and he signed a FEMA Temporary Housing Unit Inspection Report indicating that he was moving out and returning the trailer.  *Id.*

Given these facts, the Court is of the opinion that the record is insufficient to establish a due process violation.  FEMA acted within its discretion when it deactivated and retrieved the travel trailer.  The FEMA trailer belonged to FEMA, not Pride, and FEMA was not required to continue leasing the trailer to Pride. FEMA furthermore gave Pride twenty-seven-days notice before retrieving the trailer, and explained to him the reasons why it was retrieving the trailer.  In accordance with the discretionary language of the Stafford Act, its implementing regulations, the Fifth Circuit's decision in *Ridgely*, and consistent with the record, the Court finds that Pride's claims against FEMA should be dismissed with prejudice.

C.     FEMA's Counterclaim Against Pride

FEMA contends that Pride is liable for violating the False Claims Act, 31 U.S.C. §§ 3729-3733 and under common law "for his fraudulent acts, false claims, and false statements . . . in order to obtain Federal disaster assistance following Hurricane Katrina . . . ."  FEMA's Answer and Countercl. [57] at pp. 5-6.  FEMA essentially alleges that Pride represented that his primary residence was in Biloxi when it was not.  *Id.* at pp. 10-14.  On May 18, 2012, the United States Attorney's Office, Southern District of Mississippi, declined to criminally prosecute Pride in

relation to his claim for federal disaster benefits following Hurricane Katrina, finding "[n]o evidence of intent to commit fraud."  Homeland Security Mem. [97-2] at p. 25; FEMA Rep. [97-2] at p. 31.  Pride submits that FEMA's Counterclaim should be dismissed for this reason.  Pl.'s Mem. [98] at pp. 10-11.  FEMA has not responded to Pride's argument.  The Court therefore finds FEMA's Counterclaim should be dismissed.  Pride's Motion [97] for Summary Judgment will be granted to this extent and denied in all other respects.

### III.  CONCLUSION

For the foregoing reasons, FEMA's Third Motion [99] to Dismiss should be granted, and Pride's Motion [97] for Summary Judgment should be granted in part and denied in part.  All claims in this action should be dismissed with prejudice.  Pride remains liable to FEMA in the amount of $187.88 and to Mike Andrews and Jerry Creel in the amount of $473.11 for reimbursement of fees and costs resulting from Pride's failure to attend a settlement conference despite due notice.  Magistrate Judge's Order [137].  A judgment in the amount of $660.99 will therefore be entered against Pride.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant Federal Emergency Management Agency's ("FEMA's") Third Motion [99] to Dismiss, which the Court has converted to a motion for summary judgment, is **GRANTED**.  Pride's claims against FEMA are dismissed with prejudice.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that *pro se* Plaintiff Charles P. Pride's Motion [97] for Summary Judgment is **GRANTED IN PART**

**AND DENIED IN PART**.  FEMA's Counterclaim against Pride is dismissed with prejudice.

      **IT IS, FURTHER, ORDERED AND ADJUDGED** that Pride remains liable to FEMA in the amount of $187.88 and to Mike Andrews and Jerry Creel in the amount of $473.11 for reimbursement of fees and costs resulting from Pride's failure to attend a settlement conference despite due notice.  Magistrate Judge's Order [137].  A final judgment in the amount of $660.99 will therefore be entered against Pride.

      **SO ORDERED AND ADJUDGED**, this the 15th day of November, 2013.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE